May it please the court, I'm Greg Guarado and I represent Larry Trujillo. We're here from a judgment after a motion for summary judgment was granted. The case relates to the, I'll say the incarceration of my client who was a C5 quad trapegic in the Correctional Treatment Center of the Twin Towers Correctional Facility from approximately June of 2011 through July of 2014. In terms of my comments I'd like to focus first on I would consider to be evidentiary issues because the declaration of Dr. Dobkin was such a large part of the moving papers on the motion for summary judgment and I believe that there was an objection to evidence filed with regard to that declaration and I believe that the objection should have been sustained and for the simple reason that the, I'll say the supporting documents that he reviewed in preparing his findings and conclusions were not part of the record of the motion for summary judgment. I think under state law that's clear under the cases I cited that that the underlying medical records relied upon in terms of expert testimony or expert declaration has to be submitted. The court basically in addressing that issue in its order granting the plaintiff's medical records as a part of the opposing papers. Well that's true but that's not specifically true because basically out of the 15 locations or 15 sites where Mr. Dobkin or Dr. Dobkin obtained medical records or said he had reviewed medical records the only ones that plaintiffs submitted were approximately from four of those locations so there were 11 of those locations missing. Well the reason I'm addressing this is because I think that when you, it's very important that the expert testify to evidence that's in the record and formulate his opinions and conclusions from testimony that's in the record. None of the cases cited by the respondent addressed this particular issue and there's some suggestion if one goes to the use note for the evidence section that basically the supporting evidence for the expert opinion has to be in either in the record or material that could be admitted into the record but I think in the case of a medical opinion it should be a part of the record. Now the other two evidentiary issues I'll address just very quickly are that of the declarations of Dr. Tila Filof as well as the custodial officer, I think his persons were not identified in any disclosure under Rule 26 prior to the declaration submission into testimony or declarations which were submitted in in support of the motion for summary judgment. Now the question is as well counsel before do you the district court judge here appeared to have rolled against you under the subjective standard applying the subjective standard but also because I don't know if you were the lawyer in front of the district court. I was, I was your honor. He says you did not point him to specific places in the record that would create a disputed fact. Well okay let's talk about let's get to that then I mean basically what the the the moving papers were based upon Dr. Gopkin's testimony and the district court discounted the as a part of the opposing papers by Roxanne Wilson who was a nurse practitioner. He also discounted the the declaration of the Jacqueline Moore who is a nurse who is an expert in correctional care and it seemed as though the crux of the testimony or the crux or the reason that he declined to give the nurses testimony any credence is that he had a question as to whether nurses could testify as to the issues of causation and I think it's it's clear in my reply brief I went through in explicit detail what a nurse practitioner could do. It's also clear that Alicia Mahoney, Alicia Mahoney defendant was essentially the person who was the attending I'll say health care provider for the plaintiff and she was essentially you know while there's some suggestion that she was quote-unquote supervised by Dr. Wallace for all intents and purposes she was acting on her own treating this treating Mr. Trujillo basically overriding the specialist opinions that were obtained over at LA County USC when he was sent over there because he had specific problems. Well if in fact nurse Mahoney had these powers by virtue of being a nurse practitioner I think you can take that that testimony plus the testimony of both of the plaintiff's experts and they provide evidence of a genuine disputed fact on whether the care provided to Mr. Trujillo was a constitutional violation was dependent adult abuse and or was medical medical negligence and I think counsel, Judge Gould if I could just interject for a question please. You're now sort of getting closer to what was on my mind I'd like you and make in this argument to take a hypothetical for a minute assume that all the evidence comes in that Dr. Dobkins testimony comes in all the county evidence assume it's admissible but your evidence is also admitted. What issues of fact require trial? Well if all the evidence comes in it seems to me that there's issue of fact not only on the constitutional claim the you know the subsumed under the 14th amendment or we analyze it and I think that there's also a question of fact under just a medical negligence cause of action because what what the jury has to decide is whether nurse practitioner Mahoney breached the standard of practice in the community for nurse practitioners with similar training under similar circumstances and I think the and with regard in following that even on a dependent adult abuse claim the question you know the sort of the $64 question there is whether or not Mr. Trujillo was neglected and in part of the analysis of neglect is whether they failed to provide medical care for him so I think under each each and all of the claims set forth in the complaint as to nurse Mahoney there would be a question of fact to be determined by the jury rather than the way it was. I mean I can't fathom that you have you know Dr. Dobkin on one side, Nurse Moore, nurse Karen Jessam who is a registered physical therapist who's been practicing 40 or 50 years and her testimony was cited in in the opposition to the motion for summary judgment I think quite liberally and her I can't help but think it's a fact question for the jury rather than an issue for the court to decide on summary judgment. Okay thank you you've answered my question I take it from what you've said that you think that even if the county's evidence from the doctor is submitted is admitted that you still have fact issues. I do and let me let me add to that a little bit because also part of the claim against the county was a case under the ADA American with Disabilities Act and the Rehabilitation Act well you know first of all what you have to find there is intentional discrimination and it seemed like the main point of the defense on that claim was he's k-10 he's keep away so basically anything that applies to other you know that applies to other prisoners in terms of you know say opportunities see having a having some mental stimulation which he did not have for years you know I that to me would be a factual argument because just because he's k-10 you don't throw his you don't lock him in a cage and provide him with no mental stimulation I mean there's some basic rights that he's entitled to and he was being you know in his there's a declaration in the evidence and it was prepared way before I got involved it was when I believe the ACLU was investigating the county for ADA violations they were investigating the county jails for ADA violations and Mr. Trujillo made a made a declaration during the course of that and that's in my opposition papers and you know one of the things that Mr. Trujillo talks about your honor is that how his treatment as a k-10 was different than other k-10s okay counsel let me just say this I think you've answered my question adequately for me I really didn't mean to preempt my colleagues time to ask you questions I apologize let me get to take up all your time yeah let me get to for some portion of this period your client was a pretrial detainee correct he was for the major portion of the time he was a pretrial detainee so can you tell me what period it was it was I would say eighty to ninety percent of his time was as a pretrial detainee because he was involved in this criminal case there was finally a plea with resulted conviction and it seemed like as I was I was visiting him during this period of time I would say ten percent he was convicted and he was gone yeah then he would have been sent to a different state prison right right as opposed to being held in the Twin Towers yeah I mean he's some most the majority of this time he's a pretrial detainee that's correct so and you've you've listened to you sat here all morning listening to us and on these cases right and there we've been asked to extend Castro and Kingsley to cases that raise many of the claims that you're raising here and I note that judge Gutierrez did not he applied the subjective standard he didn't apply Kingsley and Castro so I don't think it makes a difference here I mean you know it's I read I've read Castro I wouldn't want us to to correct the judge if we were to decide that the Kingsley and Castro should apply at least I mean he was a pretrial detainee he has a strong claim under the 14th Amendment well I agree I mean I understand your argument but you could maybe make life easier I just you know I've read Castro and you know I'm very familiar with what Castro does in the failure to protect scheme and then I you know I went back to the jury instructions last night and tried to see if they shed any light on the medical care and it really it seems like you have questions of fact under either standard is what you're saying and summary judgment shouldn't yeah I just don't think it matters for my purposes all right so you're over your time thank you like to hear from the county now may it please the court Allison Turner for the county of Los Angeles for nurse practitioner Mahoney for doctors Azorin and dr. Wallace I think the the first question the the court asked my opposing counsel here was where in the record are the disputed facts and I think the discussion here so far this morning shows one of the problems which is this case proceeds at a certain level of generality that's almost meaningless that the care wasn't good or the care was good you have to look at it was frustrating to the judge I think because for instance in a in that statement of disputed facts where the county put on evidence through dr. Dobkin one fact was that the the skin lesions he would get from orthotic devices were tended to and cleared up and mr. Trujillo himself testified that the wound care was excellent the response from the other side disputed objection to dr. Dobkin's declaration and then just mentioning declaration of his experts not the paragraph where there would be a fact that would dispute these facts that nothing and in fact if you go to those reports it's hard to find anything about pets or so it it's difficult at that level I just would like to say on the medical issues first I I don't think we can say all the evidence is admissible I think dr. Dobkins is but I want to say just something from the reply brief counsel stated in the reply brief they were the of his experts they reviewed the records to which they applied their bank of knowledge based on their education training background about recognized treatment of spine injured persons there is we pointed out in our briefs that I believe it was more didn't even say she read the records for the jail they were not listed among the things she reviewed but aside from that there is no evidence in the record at all that there was any experience with spinal cord injuries and this is particularly noticeable if you come to the issue of medical cause so what are you talking about right now you're saying his so those should not have been admitted they weren't considered by the judge he said he would he said at one point they weren't competent but then in a footnote he was a little ambiguous in a footnote he said he didn't have to reach and do the analysis so you didn't have enough you didn't have a hearing right this was done by the judge in chambers I wasn't there so I guess he did is there was a hearing perhaps and then the order came out later the court finds the matter appropriate for decision without oral argument oh then he didn't have an argument but may I continue yes on these of course that as the miss more was qualified as an administrator of correctional institutions but how could she testify on the medical causation how could she rebut dr. Dobkin who said that the problems mr. Trujillo encountered from his rather desperate condition of being a quadriplegic or the natural were naturally and typically associated with quadriplegia and so the question is how you how you deal with them they were not experts that plaintiff proffered had any spinal cord injury experience or expressed or established it to say that what was done or not done cause these problems so that was it wasn't their title as nurse that made them not competent it was the experience and training behind them because the case law on using experts in the scientific area says they have to be very specific to you have to match the expertise to the particular issue and I don't believe that was done here wasn't it undisputed that mr. Trujillo was forced to lie on a hospital bed for a year and a half without any form of stimulation mental stimulation or entertainment other than the nurses who just the nurses who were caring for him didn't have an audio book he couldn't turn pages so I couldn't read the books that I think was magazines that were given to him could I could I cite to the record for these various things that were alleged I think that the difficulty here is there is some sometimes things are alleged and then there's Mr. Trujillo's testimony at his deposition for example the notion that he was isolated from the persons there was a chaplain once a week his family visited him this was in the fourth volume of the excerpt of record page 610 and page 515 he said nurses were there doing their job one or two hours but he said friendlier nurses stayed longer and they talked about community of current events and science and computers he brought in magazines he he didn't he wasn't able to turn himself but one of the allegations was he was denied OT but then according to his testimony again the fourth volume of the excerpt of record page 611 nurse Mahoney referred him to the hospital for PT and OT consults and it was one of the OT people there that finally devised something that he could use to turn pages on his own and not have to rely on the nurses so I have the period at approximately June 2011 to July 2014 and that the record indicates that once he received these splints he was able to turn do you know where in that time period it was late in in the time period he could turn it on his own but that's because they were trying to figure out something that would work he had been sent to the hospital for that to be referred they weren't ignoring him. What about his wheelchair? His wheelchair it was an electric state-of-the-art wheelchair this court has stated in a case that just as constitutional rights of prisoners must be considered in light of reasonable requirement of effective prison administration so much so much ADA rights the wheelchair was deemed a hazard in a prison setting because of its component parts that could be weaponized and because you could hide things there he was provided as an alternative with something called a Jerry chair which is on wheels and moves it there's some evidence that he didn't want to use that but I noted that again in fourth volume of the excerpt of record on page 500 he would sit in it three or four hours a day when he was before he came to prison so it's not like he had never used it he that suggests he could have used it if he wanted to so he was given an alternative to the wheelchair. I thought I saw in the record that that the county in even assuming you're correct that their security concerns that the county had a specific area where they could have used wheelchairs so why not why couldn't he be placed in that area? Because of his health condition he couldn't and because of his security status he was maximum security he was k-10 which means he was green-lighted and it was a target and so he couldn't leave the CTC. He could have left with a doctor's order or something but he was watched so carefully he was right by the nurses station because he had to be he would there was testimony once he woke from a nap and he felt not well and the nurse was on it instantly and he was off to the hospital to check out what it was that they were constantly monitoring him for these things. You said he was a target? That's what the he asked for that status at the beginning at one of his first incarcerations and it apparently continues on it means the gang target. And what does C10 mean? What does C10 mean that you keep? C10, K10. K10 yeah. That I don't know what that why that has that letter and number but it means that you've been green-lighted and that you it restricts you a lot you cannot be without deputy when you go to court you have to be isolated from other people you can't be just thrown in the van with the other people appearing that day it's a special status and then as far as the maximum security he was eight on a scale of one to nine based on his felony I things that that turned up that he he wanted that he didn't get it does there's no evidence that people in the CTC routinely got the things that he wanted and didn't get I mean he was treated the same as other people in that unit the television being one of the prime examples he wanted to go into the day room with the other prisoners and watch TV there but he couldn't because of his status and their concerns for that and his health so it was both those things at play do you have a perspective on the notion of the aggregate effect of cumulative violations even if one in particular would not necessarily raise concerns the aggregate effect well if they were violations I think one would be enough so I don't I think there were a lot of things here that he was in it's not an enviable position obviously that mr. Trujillo was in but I you know they they tried to do the best they could and you really have to look at what he then said I mean a typical example is showers it was brought up oh we only had two showers a month that's terrible well in one place he said about the showers that it was his choice that was in one of those declarations that he submitted it's at the second volume of the excerpt of record page 210 he was reluctant to take more than one or two showers because of the discomfort of you know it was so awkward he was in a shower chair and then shower bed I'm wondering I'm at the time I I didn't there was no evidence there was anybody else there that was quadriplegic but I don't I don't know we don't know the status of the other they would be any anybody could be there who couldn't be treated on an outpatient basis you so I think on on the ADA stuff I think that there were legitimate concerns for for some of the particular things that he complained about he would have liked to go to Rancho Los Amigos for his physical therapy but they had no oversee that so he had physical therapy twice two or three times a week in in his cell and in addition the nurses would do range of motions with him he had these consults at the hospital he said there was an allegation he was denied use the phone there was that was the isolation but then he says in his deposition he could use it anytime he wanted it was a problem with dialing the physical problem but it's whether you can have another inmate do it for you or a deputy and some of the deputies bent the rules and the phone got dialed and he said I could use the phone as much as I wanted so the picture of him flat on his back alone in a cell ignored except when a nurse came in to turn him it's just not borne out by his own testimony and on the medical issues as I say that I don't think that these witnesses that would have had to rebut dr. Dobkin were qualified under any dober standard or reliable in their testimony it was it was hard to tell the miss Wilson said she reviewed the jail but then her statements were out of the complaint or the allegations they didn't relate to any particular facts and they were contradicted she said for instance no bowel management program well he mr. Trujillo testified that that was not the case there was they disputed it but once he he took the suppositories that they were recommending he had no more problems so it wasn't true that he was having chronic constipation as the expert said unless there are further questions I would just ask the court to affirm the summary judgment yeah I'm church go further okay thank you do you want two thing I would state is I think if you look at his testimony it's pretty clear that for over a year he lay flat on his back with no mental stimulation in a closed they closed space I'll say his cell where well he might have been across from the nurse's station he only was able to get anybody's attention after after a substantial period of time I mean I think that that's pretty clear from the testimony I think if you look at the case I think that the trial court made a mistake on the ADA claims against the county and I believe that under the evidence the case should go forward against nurse Mahoney on the both the constitutional violations as well as the state violations thank you very much thank you very much Trujillo versus Los Angeles County will be submitted and this will the court will be adjourned for this session for this week thank you
judges: Wardlaw, Gould, Rogers